UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHRISTOPHER TERHUNE,

    Plaintiff,

v.                                  CASE NO: 8:08-cv-1218-T-23MAP

JOHN E. POTTER,

    Defendant.
_____/

## **O R D E R**

The plaintiff sues John E. Potter in his official capacity as the Postmaster General of the United States Postal Service for sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., ("Title VII"). The defendant moves (Doc. 27) for summary judgment, and the plaintiff responds (Doc. 31) in opposition.

### Standard of Review

Summary judgment is proper if the evidence shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(c), Federal Rules of Civil Procedure. A disputed fact is material if the fact "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S.

at 248.  The movant bears the burden of establishing the absence of a dispute over a material fact.  Reynolds v. Bridgestone/Firestone, Inc., 989 F.2d 465, 469 (11th Cir. 1993).  The evidence and factual inferences from the evidence are construed favorably to the party opposing summary judgment.  Reynolds, 989 F.2d at 469.

## Background

A career employee, the plaintiff has worked at the United States Postal Service for more than thirty years.  A member of senior management since 1994, the plaintiff has completed approximately ten sexual harassment training courses and knows the Postal Service regulation and procedure concerning formal complaints of sexual harassment.

In April, 2007, the defendant posted a vacancy for postmaster in Largo, Florida.  The plaintiff and approximately twenty-five others applied for the job.  The defendant constituted a selection committee and designated Ron Rippo as the "selecting official."  The selection committee narrowed the candidates to William Bishoff, Debra Gornik, and the plaintiff.  On June 21, 2007, Rippo notified the finalists that he had selected Gornik.  On June 28, 2007, the plaintiff emailed his supervisor, Art Rosenberg, to complain about the impropriety of Rippo's serving as the selecting official.  In the email (Doc. 27-3 at 24), the plaintiff described rumors of a "personal relationship" between Rippo and Gornik.  The plaintiff stated, "This decision by [Rippo] to promote [Gornik] is wrong and inappropriate. . . .  I am disappointed in not being selected, but I am more disappointed

- 2 -

in the blatant appearance of impropriety." On July 7, 2007, Rippo formally announced the selection of Gornik.

In early October, 2007, Bishoff received an anonymous "package" of emails between Rippo and Gornik. Suggesting a flirtatious personal relationship between Rippo and Gornik, the emails allegedly corroborate the rumors from the plaintiff's "venting letter." On October 17, 2007—more than one hundred days after the formal announcement of the Gornik promotion—the plaintiff finally sought EEO counseling for the allegedly discriminatory selection of Gornik. (Doc. 27-6 at 54) The plaintiff attached to the complaint an email in which Rippo tells Gornik, "OK[,] we have reduced the competition." (Doc. 27-6 at 58)

The plaintiff also sought EEO counseling on November 26, 2007; December 21, 2007; and January 16, 2008. In the November 26, 2007, complaint, the plaintiff alleges that Teresa Link (the district's human resource manager) represented Rippo "at the redress hearing for Bill Bishoff's EEO complaint against Mr. Rippo. How can Teresa Link represent Mr. Rippo when she was supposed to have investigated the allegations in the letters Art Rosenberg forwarded her on 6/28/2007?" (Doc. 27-6 at 62) In the December 21, 2007, complaint, the plaintiff alleges that two special agents from the Office of the Inspector General arrived at the plaintiff's office to investigate the plaintiff's EEO complaint. The plaintiff complains:

> The employees of the Dunedin post office watched inspectors flash their badges, have a 90-minute closed door session with me and then saw inspectors carry away my computer. The company I work for has humiliated me and undermined my authority and credibility. I cannot begin to articulate the betrayal of trust and humiliation that I feel. . . . The intimidation and humiliation were deliberate and in retribution for filing an

- 3 -

>     EEO. I was basically accused of things I did not do, and investigated,
>     interrogated, and intimidated for filing a complaint.

(Doc. 27-6 at 67) In the January 16, 2008, EEO complaint, the plaintiff alleges that Leroy Middleton, the plaintiff's supervisor, attempted to move the plaintiff to a New Port Richey office in retaliation for the plaintiff's earlier EEO complaints. Before the plaintiff filed his EEO complaint, however, the district manager decided not to move the plaintiff to New Port Richey. (Doc. 27-6 at 71-72)

On May 30, 2008, the plaintiff received a "right to sue" letter. On June 25, 2008, the plaintiff sued (Doc. 1), and the plaintiff effected service on the defendant two days later. On July 8, 2009, Middleton issued the plaintiff and several other employees a "Letter of Warning" (Doc. 27-6 at 53) for failing to file an online report. On July 14, 2009, Middleton denied the plaintiff's request for "compensatory time." Middleton stated that he denied the plaintiff's request because the plaintiff is an exempt employee and because the plaintiff voluntarily worked the extra hours for which he sought compensatory time. Middleton also stated:

>     All I can tell you is [the plaintiff] requested comp time, and one of the
>     things that I considered is there has been numerous requests from Mr.
>     Terhune, probably more than about thirty different requests where he has
>     a 12:00 o'clock appointment, he needs to go home, an 11:00 o'clock
>     appointment, 1:00 o'clock, I need to go home, and not one time have I
>     denied him that he could go home early. So at one point you're asking for
>     comp time because you worked eight hours, but yet you got fifty plus
>     hours where you went home and I didn't charge you leave, so it kind
>     of—that's one of the benefits of being an EAS employee, is that you're
>     going to give a little and sometimes you're going to be able to take a little,
>     for lack of a better word.

(Doc. 27-6 at 30) Finally, Middleton stated that he learned of the plaintiff's lawsuit "[m]aybe two months" before his deposition in January, 2009. Middleton's unrebutted

- 4 -

testimony states that "I didn't know [in July, 2008] that [the plaintiff] had filed a federal case." (Doc. 27-6 at 26)  The plaintiff failed to file an EEO complaint for Middleton's allegedly retaliatory action on July 8, 2008, and July 14, 2008.

Discussion

The plaintiff alleges that by promoting Gornik the defendant discriminated against the plaintiff based on the plaintiff's gender in violation of Title VII.  The plaintiff further alleges that the defendant retaliated against the plaintiff after the plaintiff sought EEO counseling and sued in federal court.  The defendant allegedly retaliated by (1) issuing the July 8, 2008, "Letter of Warning" and (2) denying the plaintiff's "reasonable request" for compensatory time on July 14, 2009.

I. Exhaustion of Administrative Remedies

A federal employee who believes he has "been discriminated against on the basis of race, color, religion, sex, national origin, age or handicap must consult an [EEO] Counselor prior to filing a complaint in order to try to informally resolve the matter." 29 C.F.R. § 114.105(a)(1); see also 42 U.S.C. § 2000e-16.  The employee must consult an EEO counselor within forty-five days after the allegedly adverse action.  29 C.F.R. § 114.105(a)(2).  "[B]y choosing what are obviously quite short deadlines, Congress clearly intended to encourage the prompt processing of all charges of discrimination." National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 108 (2002).  "'[S]trict

adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.'" Morgan, 536 U.S. at 108.

"Each discrete discriminatory act starts a new clock for filing charges alleging that act." Morgan, 536 U.S. at 113. Accordingly, the EEO charge must be filed within forty-five days after each discrete discriminatory act occurred. Although Morgan involved discrete acts that occurred more than 300 days before the plaintiff formally complained to the EEO, Morgan's analysis also applies to discrete acts after an initial EEO charge. See EEOC v. Joe's Stone Crab, Inc., 296 F.3d 1265, 1272 n.5 (11th Cir. 2002) ("We note . . . that Title VII requires a charge to be filed 'after the alleged unlawful employment practice occurred' and that '"occurred" means that the practice took place or happened in the past.'" (quoting Morgan, 536 U.S. at 109-10)); see also Martinez v. Potter, 347 F.3d 1208 (10th Cir. 2003).[1]

The defendant argues that (1) the plaintiff's discrimination claim is barred because the plaintiff failed to seek EEO counseling within forty-five days after the Gornik promotion and (2) the plaintiff's retaliation claims are barred because the plaintiff failed

---

[1] The Circuit Courts of Appeals disagree whether Morgan v. National R.R. Passenger Corp., 536 U.S. 101 (2002), requires exhaustion of a post-charge, discrete act of discrimination. Cf. Martinez v. Potter, 347 F.3d 1208, 1210 (10th Cir. 2003) (holding that Morgan requires exhaustion) with Wedow v. Kansas City, Mo., 442 F.3d 661, 673-74 (8th Cir. 2006) (retaliation claims remain viable without separate exhaustion). The Eleventh Circuit has not addressed the issue. See Bennett v. Chatham County Sheriff Dep't, 315 F. App'x 152, 162 n.7 (11th Cir. 2008) (unpublished opinion) (noting the circuit split but assuming without deciding that the plaintiff's "retaliatory failure-to-promote claims fall within the scope of the 2005 EEOC charge"); see also Sumrall v. Potter, No. 4:03-cv-103-SPM, 2007 WL 1202722 (N.D. Fla. Apr. 22, 2007) (declining to extend Morgan to require exhaustion of a post-complaint retaliation claim); Casiano v. Gonzales, No. 3:04-cv-67/RV/MD, 2006 WL 229956, at *16 (N.D. Fla. Jan. 31 2006) (applying Morgan to bar unexhausted, post-complaint retaliation claims). However, no relevant distinction exists "between Morgan's holding that plaintiffs may not revive a stale discrimination claim by tying it to a timely-filed claim, and defendant's argument here that the plaintiff should not be permitted to avoid the requirement of exhaustion merely because this latest act of alleged discrimination . . . is tied to earlier, exhausted complaints." Coleman-Adebayo v. Leavitt, 326 F. Supp. 3d 132, 138 (D.D.C. 2004).

- 6 -

to seek counseling for the two allegedly retaliatory acts in July, 2008. The plaintiff responds that the discrimination charge was timely because the plaintiff sought EEO counseling within forty-five days after receiving the package of emails. The plaintiff argues that the defendant "is estopped from benefitting from the wrongdoing of its own high level manager, Rippo . . ., who intentionally deceived senior postal management about his relationship with Gornik." (Doc. 31 at 14) The plaintiff wholly fails to address the defendant's argument that the retaliation claims are barred for failure to seek EEO counseling.

The plaintiff's discrimination claim challenges Rippo's selecting Gornik, Rippo's purported paramour, instead of the plaintiff for postmaster of Largo, Florida. On June 21, 2007, Rippo notified the plaintiff that Rippo had selected Gornik for the position. On July 7, 2007, Rippo formally announced the selection of Gornik. Nevertheless, the plaintiff failed to seek EEO counseling until October 17, 2007, more than a hundred days after the formal announcement of the Gornik promotion.

The plaintiff argues that he obtained sufficient evidence to file a charge only after Bishoff discovered the package of emails in early October, 2007. However, on June 28, 2007, the plaintiff emailed his supervisor to complain about the impropriety of Rippo's serving as the selecting official. In the email (Doc. 27-3 at 24), the plaintiff described rumors of a "personal relationship" between Rippo and Gornik. Thus, the plaintiff knew the basis for his discrimination charge even before the formal announcement of the promotion.[2] Because the plaintiff failed to seek EEO counseling within forty-five days

---

[2] The plaintiff admitted to considering filing an EEO charge in late June and early July, 2008: "I
(continued...)

- 7 -

after the announcement of the Gornik promotion, the plaintiff's discrimination claim is untimely.

The plaintiff's retaliation claims are also untimely. Although perhaps "related" to the plaintiff's discrimination claim, the two July, 2008, "retaliatory" acts constitute discrete acts of discrimination. See Martinez v. Potter, 347 F.3d 1208, 1211 (10th Cir. 2003) ("The September 2000 and April 2001 disciplinary actions are clearly discrete and independent actions, though part of what Mr. Martinez must necessarily claim is a 'continuing violation.'"); Coleman-Adebayo v. Leavitt, 326 F. Supp. 2d 132, 138 (D.D.C. 2004) ("Individual acts of retaliation that form the basis of retaliation claims . . . are included within the Supreme Court's list of discrete discriminatory acts, and therefore any claim stemming from those acts must be administratively exhausted."). "Each discriminatory act starts a new clock for filing charges alleging that act." Morgan, 536 U.S. at 113. "A discriminatory act which is not made the basis for a timely charge . . . is merely an unfortunate event in history which has no present legal consequences." United Airlines v. Evans, 431 U.S. 553, 558 (1977). The plaintiff produces no evidence that he exhausted his administrative remedies for the July, 2008, "retaliatory" acts. Because the plaintiff failed to timely exhaust his administrative remedies, the plaintiff's claims are barred.

---

(...continued)
considered it . . . and I knew that my time— . . . the time frame was . . . a certain thing and that . . . you had to . . . act within 45 days from the . . . date of the incident or your knowledge of the incident . . . . [I]t was a difficult decision for me." (Doc. 27-4 at 20)

## II. Discrimination Claim

Even if timely, the plaintiff's discrimination claim lacks merit. The plaintiff alleges that the defendant discriminated against the plaintiff based on the plaintiff's sex because Rippo, the selecting official, promoted Gornik, Rippo's purported girlfriend. However, "Title VII does not prohibit . . . preferential treatment based upon consensual romantic relationships. An isolated instance of favoritism toward a 'paramour' . . . may be unfair, but it does not discriminate against women or men in violation of Title VII, since both are disadvantaged for reasons other than their genders." EEOC Policy Guidance on Employer Liability Under Title VII for Sexual Favoritism, EEOC Notice No. N-915-048 (Jan. 12, 1990). No distinction appears between this case and Womack v. Runyon, 147 F.3d 1298 (11th Cir. 1998), in which the court upheld summary judgment for the Postmaster General on the plaintiff's sex discrimination claim that he was denied a promotion because the plaintiff's male supervisor promoted the supervisor's female, less qualified paramour. Accord Taken v. Oklahoma Corp. Comm'n, 125 F.3d 1366, 1369-70 (10th Cir. 1997) (holding that male supervisor's promotion of his paramour failed to state a claim for sex discrimination); Becerra v. Dalton, 94 F.3d 145 (4th Cir. 1996) (same).

Furthermore, the plaintiff also fails to establish that he was more qualified than Gornik for the postmaster position. "A plaintiff must show that the disparities between the successful applicant's and her own qualifications were 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff.'" Brooks v. County Comm'n of Jefferson

County, 446 F.3d 1160, 1163 (11th Cir. 2006) (quoting Cooper v. Southern Co., 390 F.3d 695, 732 (11th Cir. 2004), cert. denied, 546 U.S. 960); see also Ash v. Tyson Foods, Inc., 546 U.S. 454 (2006) (per curiam) (approving of the " no reasonable person" language from Cooper). At the time of Gornik's promotion, Gornik had served as a permanent postmaster in two locations, and the plaintiff lacked experience as a permanent postmaster.[3]

### III. Retaliation Claims

Title VII prohibits an employer's retaliating against an employee for opposing an unlawful employment practice. See Burlington N. and Santa Fe Ry. Co. v. White, 548 U.S. 53, 59 (2006). To establish a Title VII retaliation claim based on circumstantial evidence, the plaintiff must show that (1) he "engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there is a causal [connection] between the two events." Crawford v. Carroll, 529 F.3d 961, 970 (11th Cir. 2008); Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1336 (11th Cir. 1999). If the plaintiff establishes a prima facie case, the defendant must produce a legitimate, non-retaliatory reason for its actions. See Farley, 197 F.3d at 1337. If the defendant

---

[3] Tim Healy, the defendant's senior district manager, testified:

> As far as best, I would say who had the most experience demonstrated at the level as installation head—and that was what we were selecting, was installation head—was Ms. Gornik. Ms. Gornik had been a Level 21 Postmaster, a Level 22 Postmaster, and here we were selecting a Level 24. The other candidates did not have that experience as an official at an installation head. Although they did have some acting experience as Officer in Charge, they never had that formally as being an installation head at those levels.

(Doc. 27-11 at 55).

- 10 -

produces a legitimate reason, the plaintiff must offer evidence from which a jury may conclude that the offered reason is "a pretextual ruse for retaliation." See Farley, 197 F.3d at 1337 (internal quotation marks omitted).

A. Prima Facie Case

The plaintiff establishes the first element of the prima facie case by seeking EEO counseling on October 17, 2007; November 26, 2007; December 21, 2007; and January 16, 2008, and by suing on June 25, 2008. Both the EEO complaints and the lawsuit constitute "protected expression." See Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (noting that Title VII prohibits "employer actions that are likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and their employers"). The plaintiff allegedly suffered an adverse employment consequence from both (1) the June 8, 2008, "Letter of Warning" and (2) Middleton's refusal on July 14, 2008, to grant the plaintiff's "reasonable request" for "comp time." See Martinez v. Henderson, 252 F. Supp. 2d 1226, 1238 (D.N.M. 2002) (postal service Letter of Warning constitutes an adverse employment action); Hughes v. Stottlemyre, 454 F.3d 791, 797 (8th Cir. 2006) (loss of compensatory time).

To establish causation, the plaintiff must show that the alleged retaliator was aware of the plaintiff's "protected activity" and that "the protected activity and the adverse action were not wholly unrelated." Gupta v. Florida Bd. of Regents, 212 F.3d 571, 590 (11th Cir. 2000) (abrogated on other grounds in Burlington N., 548 U.S. at 68). For the purpose of establishing a prima facie case, a "'close temporal proximity'

between the protected expression and an adverse action is sufficient circumstantial evidence" of causation. See Olmsted v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th Cir. 1998). Absent additional evidence of causation, however, "'mere temporal proximity between knowledge of protected activity and an adverse action must be 'very close.'" Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004) (quoting Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001)). "If there is a substantial delay between the protected expression and the adverse action in the absence of other evidence tending to show causation, the complaint of retaliation fails as a matter of law." Higdon, 393 F.3d at 1220.

In this case, the plaintiff alleges that Middleton retaliated against the plaintiff on July 8, 2008, and on July 14, 2008. The plaintiff sought EEO counseling on October 17, 2007; November 26, 2007; December 21, 2007; and January 16, 2008. Although Middleton admitted to knowledge of the plaintiff's EEO charges, the plaintiff produces no additional evidence of causation. Absent additional evidence, no juror could reasonably infer causation from a six-month interlude between the plaintiff's EEO charges and the first adverse employment action. See Thomas v. CVS/Pharmacy, No. 08-14464, 2009 WL 1956256, at *3 (11th Cir. July 9, 2009) (per curiam) (three-and-a-half months too remote to infer causation); Wallace v. Georgia Dep't of Transp., 212 F. App'x 799 (11th Cir. 2006) (seven months too remote); Higdon, 393 F.3d at 1220 (three-months too remote); Wascura v. City of S. Miami, 257 F.3d 1238, 1248 (11th Cir. 2001) ("Wascura failed to present evidence from which a reasonable jury could find any causal connection between Wascura's notice to the Commissioners in January, 1995, of her

potential need to take time off to care for her son and her subsequent termination on May 16, 1995."); see also Richmond v. ONEOK, 120 F.3d 205, 209 (10th Cir. 1997) (three months too remote) and Hughes v. Derwinski, 967 F.2d 1168, 1174-75 (7th Cir. 1992) (four months too remote) (cited with approval in Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001)).

The plaintiff also notes that Middleton's alleged retaliation occurred only eleven days after the defendant was served with the complaint. However, the plaintiff produces no evidence that Middleton was aware of the plaintiff's lawsuit in July, 2008. See, e.g., Pomales v. Celulares Telefonica, Inc., 447 F.3d 79, 85 (1st Cir. 2006) (holding that the plaintiff failed to establish a prima facie case of retaliation because there was no evidence that the decision-maker knew of the plaintiff's protected conduct); Sanchez v. Denver Pub. Schs., 164 F.3d 527, 533-34 (10th Cir.1998) (same); Smith v. Riceland Foods, Inc., 151 F.3d 813, 818-19 (8th Cir. 1998) (same). The plaintiff notes that Middleton works "down the hall" from Healy, but the plaintiff establishes neither when Healy learned of the lawsuit nor that Healy and Middleton ever discussed the lawsuit. In fact, Middleton's unrebutted testimony establishes that Middleton learned of the plaintiff's lawsuit only two months before his deposition in January, 2009. (See Doc. 27-6 at 26) Because the plaintiff identifies no additional evidence of causation,[4] the retaliation claims fail as a matter of law.

---

[4] See White v. McDonnell Douglas Corp., 904 F.2d 456, 458 (8th Cir. 1990) ("A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim.").

### B. Legitimate, Non-retaliatory Reasons

Even if the plaintiff establishes a prima facie case of retaliation, the defendant identifies legitimate, non-retaliatory reasons for each allegedly retaliatory action. Middleton issued the plaintiff and several other employees a "Letter of Warning" (Doc. 27-6 at 53) for failing to file an online report. Middleton denied the plaintiff's request for "compensatory time" because the plaintiff is an exempt employee and because the plaintiff voluntarily worked the extra hours for which he sought compensatory time. See Meiners v. University of Kan., 359 F.3d 1222, 1231 ("Temporal proximity is much less suspicious when the adverse action is the denial of an affirmative request the plaintiff made subsequent to the protected activity."). The defendant produces a legitimate, non-retaliatory reason for each allegedly retaliatory act.

### C. Evidence of Pretext

Because the defendant articulated a legitimate, non-discriminatory reason for each allegedly retaliatory act, the plaintiff must show that the proffered reasons are mere pretext for discrimination. See Crawford v. Carroll, 529 F.3d 961, 976 (11th Cir. 2008). To show that the defendant's reasons were pretextual, the plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997). The plaintiff may not "recast an employer's proffered non-discriminatory reasons or substitute his own business judgment for that of the employer. Provided that the proffered reason is one that might

motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." Chapman v. AI Transport, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc).

The plaintiff fails to produce any evidence of pretext. Middleton stated that he issued the July 8, 2008, Letter of Warning to the plaintiff and several of the plaintiff's peers because each employee failed to file a required online report. The plaintiff presents no evidence that he actually filed the report or that another employee failed to file the report but received no Letter of Warning. Likewise, the plaintiff fails to rebut Middleton's explanation for denying the plaintiff's request for compensatory time. The plaintiff presents no evidence to rebut Middleton's statement that the plaintiff is an "exempt employee" for whom compensatory time remains unavailable.

Conclusion

Each of the plaintiff's claims is untimely and lacks merit. Accordingly, the defendant's motion (Doc. 27) for summary judgment is **GRANTED**. The Clerk is directed to (1) enter judgment in favor of the defendant and against the plaintiff on each count of the amended complaint, (2) terminate any pending motion, and (3) close the case.

ORDERED in Tampa, Florida, on July 31, 2009.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE